[No. 1960.]

WITCHER v. McPHEE ET AL.

1. PRINCIPAL AND AGENT—INSTRUCTIONS—HARMLESS ERROR.
In an action upon promissory notes where the defendant merely denied the execution of the notes without alleging in his answer or in his evidence who did execute them, an instruction that "the defendant alleges that the notes in question were executed by one L. without authority from him to make such notes" was incorrect, but where the proof was conclusive and undisputed that L. did execute the notes, the instruction was not prejudicial.

2. PRINCIPAL AND AGENT—PRINCIPAL'S INSTRUCTIONS TO AGENT—PRESUMPTION.
Where an agent for a long period of time pursues a certain method in the conduct of his principal's business without token of dissatisfaction from the principal, it will be presumed that the method of conducting the business corresponds with the agent's instructions from his principal.

3. PRINCIPAL AND AGENT—AGENT'S AUTHORITY.
Where an agent's authority is absolute, a person dealing with him is not required to inquire as to the extent of his authority.

4. SAME—BILLS AND NOTES.
Where a lumber dealer intrusted the entire management and control of his business to an agent, who bought and sold lumber in defendant's name, both for cash and on credit, deposited the money in bank and checked it out to pay bills, signed notes in defendant's name, some of which defendant settled, and in his dealings with plaintiffs,—wholesale lumber dealers,—covering a period of more than a year, he wrote a number of letters to plaintiffs containing orders for lumber, remittances on account, checks to be credited on notes and requests for time, to all of which he signed defendant's

name, followed by the initial of his own, the facts warranted the finding that the agent had authority to execute notes in defendant's name to plaintiffs in consideration of lumber furnished defendant and that defendant was liable thereon.

*Appeal from the District Court of El Paso County.*

Mr. CHAS. E. WALDO and Mr. CLYDE C. DAWSON, for appellant.

Messrs. HARTZELL & STEEL, for appellees.

THOMSON, J.

Suit upon two promissory notes executed to the plaintiffs, one for $1,000, dated August 10, 1896, due in thirty-five days, and the other for $163.65, dated December 10, 1896, payable on demand. There was a verified answer denying the execution and delivery of the notes. The signature affixed to each note was "J. R. Witcher, L." Witcher was a lumber dealer at Cripple Creek, Colorado, and operated a sawmill at a considerable distance out; and at the date of these notes, and for a considerable time before, his lumber business was carried on under the management of A. H. Lefler. It was shown by a witness qualified to testify on the subject, that these notes, and the other exhibits produced, were in the handwriting of Lefler. The evidence was uncontradicted. The consideration of the notes was lumber furnished by the plaintiffs to the defendant, and the controlling question in the case relates to the authority of Lefler to bind the defendant by the notes.

Before proceeding to the consideration of this question, it will be well to dispose of the following instruction given at the request of the plaintiffs, to which the defendant takes serious exception: "The defendant alleges that the notes in question were executed by one Lefler without authority from him to make such notes." Neither in his answer nor in his testimony did the defendant allege that the notes were ex-

ecuted by Lefler, and the statement in the instruction that
he did, was incorrect. But in order that an error committed
in the progress of a litigation, in behalf of the successful
party, may work a reversal of the judgment, its nature must
be such that it may result in prejudice to the rights of the
other. Now the fact of the execution of the notes by Lefler
were not in question. The proof for the plaintiffs was that
they were executed by Lefler, and that they were, was.not.
disputed by the defendant. It was the duty of the court
to tell the jury that the evidence was conclusive that Lefler
wrote and signed the notes, and so long as the jury were in-
formed that there was no question relating to the handwriting
of the notes for them to consider, we are unable to see how
an incorrect statement of the manner in which the question
was eliminated could work harm to the defendant. The real
question was whether Lefler had authority to make the notes,
or whether the words or acts of the defendant were such as
to justify the plaintiffs in believing that he had such authority;
and if the evidence warranted the court in submitting that
question to the jury at all, we are unable to see that the other
instructions given are subject to serious criticism.

From the evidence, it appears that for a considerable time
before and after the making of the notes, there were continuous
business transactions between the plaintiffs and the defend-
ant, all of which were managed in behalf of the defendant by
Mr. Lefler. A number of letters to the plaintiffs relating to
these transactions were in evidence. They covered a period
of time extending from December 9, 1895, to December 12,
1896, and the earliest of them refers to previously transacted
business. They were all signed "J. R. Witcher, L.," except
one, and that was signed "A. H. Lefler." They contained
orders for lumber, remittances on account, checks to be cred-
ited on the notes, and requests for time.

The plaintiff, McGinnity, had a conversation with the de-
fendant at the office of the plaintiffs, in which, in response to
some remark or suggestion of McGinnity about the purchase
of goods, the defendant said he had nothing to do with the

buying of material; that he had made an arrangement with Lefler to run his business, and that he was going to attend to the sawmill. This conversation occurred shortly after the plaintiff, according to his statement, had made the arrangement with Lefler. In his testimony, the defendant said that Lefler had authority to sell lumber, bank the money, draw checks and pay bills. From the testimony of witnesses who had occasion to know the manner in which the lumber dealings of Witcher were conducted after the business was turned over to Lefler, the latter was, to all appearances, in absolute control. He bought material, made all payments and collections, deposited the money received, and checked against it, and used Witcher's credit in the business as he saw fit. When Witcher was present, as he occasionally was, he made no suggestions, and took no part in the transactions. The latter said in his testimony that he did not know what kind of a business Lefler was doing. In the course of the business, in settlement of indebtedness incurred in carrying it on, Lefler executed a number of notes in Witcher's name, other than those in suit, the payment of some of which was afterwards secured by Witcher.

Witcher testified that Lefler had no authority from him to buy on credit, or make any papers, and that Lefler was instructed to do a cash business. When the instructions were given, he did not say, but if such was the original situation, the authority must have been changed, and the instructions revoked, for Lefler did not do a cash business, and, so far as can be gathered from the evidence, all the purchases were made on credit. Witcher was present a number of times when Lefler was buying on credit, and gave no sign of disapproval. Lefler made notes other than those in suit, Witcher knew he made the notes, and secured some of them, but if Witcher ever called Lefler to account for disobeying his instructions in giving the notes, the evidence makes no mention of the fact. Lefler continued in charge of the business as before, and conducted it as before, without protest from Witcher. It is to be presumed that a principal will not tol-

erate continued and persistent disregard of his instructions by his agent, and if the agent, for a long period of time, pursues a certain method in the conduct of the business of his principal, without token of dissatisfaction from the latter, the presumption is that the method and the instructions correspond. From the testimony of Witcher and his statement to McGinnity, and from the evidence of the manner in which the business was uniformly conducted by Lefler, with the acquiescence on the part of Witcher which silence indicates, we think an inference that by the arrangement between Wichter and Lefler, the latter was invested with all the power of the former, is entirely legitimate.

Respecting the proposition that it is the duty of a person dealing with an agent to inquire into the extent of his authority, we have no controversy with counsel. Ordinarily, unless the conduct of the principal renders inquiry unnecessary, persons transacting business with an agent are bound by the limitations upon his authority. But when the power of the agent is absolute, inquiry would disclose no limitations; whatever the principal might do, the agent might do; and any lawful act of the agent in relation to the business,—any act which the principal himself might lawfully perform,—would have the same force, and be followed by the same consequence as if it had been done by the latter.

We think the finding, necessarily involved in the verdict, that Lefler had authority to make these notes, was warranted by the evidence.

The judgment will be affirmed.

*Affirmed.*